**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:19-cv-02365-JPH-MPB |
| v. | ) | |
| | ) | |
| | ) | |
| FIRST MERCHANTS BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SETTLEMENT AGREEMENT AND AGREED ORDER**

## I.    Introduction

The United States of America and First Merchants Bank jointly submit this Settlement Agreement and Agreed Order ("Agreed Order") for approval and entry by the Court.  In the Complaint filed simultaneously with this Agreed Order, the United States alleged that First Merchants Bank engaged in a pattern or practice of mortgage credit discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, by discriminating on the basis of race in providing residential real estate-related credit.

There has been no factual finding or adjudication with respect to any matter alleged by the United States.  The parties enter into this Agreed Order to voluntarily resolve the claims asserted in the Complaint.  The parties agree that the full implementation of the terms in this Agreed Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with First Merchants Bank's legitimate business interests.

## II.    Background and Recitals

1.    The parties enter into this Agreed Order to resolve the claims of the United States against First Merchants Bank under the FHA and ECOA.  The United States contends that the Bank, through its residential real estate lending-related policies and practices, engaged in a pattern or practice of discrimination on the basis of race in violation of the FHA, 42 U.S.C. §§ 3604(a)-(b), 3605(a), and each of its respective implementing regulations, and ECOA, 15 U.S.C. §§ 1691(a)(1), 1691e(h).  The claims are also based on the United States' assertion that these policies and practices constitute a denial of rights granted by the FHA to a group of persons that raises an issue of general public importance.  42 U.S.C. § 3614(a).

2.    First Merchants Bank is a full-service bank headquartered in Muncie, Indiana.  It is wholly-owned by First Merchants Corporation, which is also based in Muncie.  First Merchants Bank is subject to the regulatory authority of the Federal Deposit Insurance Corporation ("FDIC"). The Bank is also subject to federal laws governing fair lending, including the FHA and ECOA as well as each of their respective implementing regulations, 24 C.F.R. pt. 100 (FHA) and Regulation B, 12 C.F.R. pt. 1002 (ECOA).

3.    On June 5, 2017, the United States notified First Merchants Bank that it had opened an investigation into whether the Bank's lending practices in the Indianapolis-Carmel-Anderson, Indiana Metropolitan Statistical Area ("MSA") constituted discrimination on the basis of race in violation of the FHA and ECOA.  On May 20, 2019, the United States informed First Merchants Bank that based on its investigation, the Assistant Attorney General for the Civil Rights Division had authorized the filing of a complaint alleging that the Bank engaged in illegal redlining. Specifically, the United States alleged that the Bank engaged in illegal redlining in violation of the FHA and ECOA by avoiding and otherwise failing, on the basis of race, to provide mortgage credit

services to majority-Black areas within Indianapolis-Marion County, Indiana between 2011 and 2017.

4.     First Merchants Bank denies any liability, wrongdoing, or non-compliance with the provisions of the FHA and ECOA.

5.     First Merchants Bank has represented to the United States that it has made certain improvements to its internal fair lending compliance and monitoring controls and has made an effort to increase its lending in majority-Black areas within Indianapolis-Marion County through the development of new loan products, new marketing strategies, increased community investment, hiring of community lending specialists, strategic partnerships with local housing groups, and additional community outreach initiatives.  The Bank has adopted these strategies and initiatives voluntarily and before entry of this Agreed Order.

6.     There has been no factual finding or adjudication with respect to any matter alleged by the United States.  The parties enter into this Agreed Order to avoid the risks, expense, and burdens of litigation and to voluntarily resolve the claims by the United States based on First Merchants Bank's alleged violations of federal fair lending laws.

7.     This Agreed Order is a compromise of disputed claims and is not an admission by First Merchants Bank of any liability, wrongdoing, or non-compliance with the provisions of the FHA or ECOA.

## III.    Terms of the Order

### A.    Lending Practices

8.     First Merchants Bank, including all of its officers, employees, agents acting on behalf of the Bank, representatives, assignees, and successors in interest, are hereby enjoined from engaging in any act or practice that discriminates on the basis of race that: (1) violates the FHA in

any aspect of a residential real estate-related transaction; or (2) violates ECOA in any aspect of a credit transaction.  Prohibited practices include, but are not limited to, those related to: (1) using race and other protected characteristics under the FHA and ECOA to make marketing and advertising decisions; (2)  using race and other protected characteristics under the FHA and ECOA in the selection of sites for and the provision of services through branch offices or other channels; (3) using race and other protected characteristics to assign, train, and monitor mortgage loan officers; and (4) using race and other protected characteristics under the FHA and ECOA to determine geographical areas in which to solicit loan applications and generate originations.  These prohibitions do not apply where federal law permits the consideration of such characteristics, where the consideration of such characteristics is for the purpose of complying with the FHA and ECOA, or where the consideration of such characteristics is necessary to comply with the terms of this Agreed Order.

9.     The Bank shall take the actions necessary to ensure that they offer and provide all persons with an equal opportunity to apply for and obtain credit, regardless of the racial composition of the area in which a person lives, or the area in which the property securing the loan is located.  Those actions include, but are not limited to, the actions specified in this Agreed Order.

10.     The Bank shall take all reasonable and practicable steps consistent with safety and soundness, including, but not limited to, those specified below, to make all types of residential loan products it offers available in, and market them in, majority-Black census tracts on no less favorable a basis than in the majority-White census tracts so that all persons will have an equal opportunity to access and obtain credit from the Bank.  Nothing in this Agreed Order requires the Bank to make unsafe or unsound loans, or requires loans to be originated or priced based upon the race of the borrower or prospective borrower.

11.     The Bank retains the discretion to take any additional actions it believes are appropriate to achieve the goals of the Agreed Order and shall include information about such actions in its reporting under Paragraph 48.

12.     For purposes of this Agreed Order, the Bank's "lending area" consists of the following counties: Brown, Hamilton, Hancock, Hendricks, Johnson, Madison, Morgan, Shelby, and Indianapolis-Marion County.

13.     For purposes of this Agreed Order, any census tract in which Blacks constitute more than 50% of the population at the time of the 2015 American Community Survey five-year estimate is considered a "majority-Black census tract," and any census tract in which non-Hispanic Whites constituted more than 50% of the population at the time of the 2015 American Community Survey five-year estimate is considered a "majority-White census tract."

### B.     Fair Lending Compliance and Training

14.     Within 60 days of the entry of this Agreed Order ("Effective Date"), the Bank must retain an independent third party consultant to conduct a detailed assessment of the Bank's fair lending risk management program, subject to the United States' non-objection.[1] The assessment must include a review and revision, as necessary, of the Bank's fair lending policies, procedures, monitoring and training to ensure its compliance with the fair lending laws as they relate to making available and marketing products in majority-Black census tracts.  The assessment must also

---

[1] "Non-objection" means written notification to the Bank that there is no objection to a proposal by the Bank for a course of action.  The United States will endeavor to direct revisions or provide a non-objection generally within 30 days of the submission of a proposal, unless otherwise noted in this Agreed Order.  In the event of an objection to a proposal, the Bank will make all revisions directed by the United States and resubmit the proposal for non-objection within 14 days.  Unless otherwise specified below, the Bank will begin implementation of the course of action and follow any steps, recommendations, deadlines, and timeframes within 14 days of receipt of the non-objection.  Any material changes to the course of action cannot be made without the Bank first obtaining written notification from the United States that there is no objection to the proposed change.

include, at a minimum, an analysis of the Bank's policies and practices related to branch locations; loan officers' solicitation of applications, training, oversight, and compensation; marketing; and fair lending compliance monitoring.

15.     The assessment will be completed within 120 days of the United States' non-objection.  Within 45 days of receiving the final assessment from the independent third party, First Merchants Bank must submit to the United States a detailed written report by the consultant describing any recommended improvements to the Bank's policies and practices that are relevant to ensuring that the Bank complies with the FHA and ECOA in terms of making available and marketing products in majority-Black census tracts.  The Bank shall also submit a written report regarding which of the consultant's recommendations it will adopt or implement as well as the Bank's plan regarding when and how it intends to adopt or implement those recommendations. To the extent that the Bank declines to adopt or implement a recommendation from the consultant, the Bank will explain its reasoning to the United States.  The recommendations of the consultant and the Bank's plan for adopting, implementing, or declining to implement any recommendations are subject to the United States' non-objection.

16.     First Merchants Bank shall maintain a fair lending monitoring program that includes periodic statistical analyses of mortgage underwriting, pricing, and redlining risk.

17.     Within 120 days of the Effective Date, the Bank will provide training to all employees with significant involvement in mortgage lending, marketing or Community Reinvestment Act ("CRA") compliance within the lending area, all senior management, and all members of the Board of Directors to ensure that their activities are conducted in a non-discriminatory manner.  This training will address the Bank's obligations under the FHA and ECOA as well as the Bank's responsibilities under this Agreed Order.  The training must require

employees to verify participation and demonstrate proficiency. The Bank will provide this training annually to all employees with significant involvement in mortgage lending, marketing or CRA compliance within the lending area, senior management, and members of the Board of Directors. The selection of the proposed training curriculum will be subject to the United States' non-objection. The Bank will bear all costs associated with the training.

18.     Within 30 days of the Effective Date, the Bank will provide to all employees with significant involvement with mortgage lending, marketing or CRA compliance within the lending area, senior management, and members of the Board of Directors copies of this Agreed Order, and allow an opportunity for such employees and members to have any questions concerning the Agreed Order answered.

19.     The Bank will  provide a signed statement from each employee with significant involvement with mortgage lending, marketing or CRA compliance within the lending area, each member of senior management, and each member of the Board of Directors acknowledging that he or she has completed fair lending training and has received a copy of this Agreed Order or provide an electronically generated report confirming that each employee with significant involvement with mortgage lending, marketing or CRA compliance within the lending area, each member of senior management, and each member of the Board of Directors has completed fair lending training and has received a copy of this Agreed Order.  If the Bank elects to provide statements in lieu of electronically generated reports, such statements will be substantially in the form of Appendix A (Fair Lending Training) and Appendix B (Acknowledgement of Receipt of Agreed Order), and can be submitted in electronic form.

20.     Any individual who becomes an employee with significant involvement with mortgage lending, marketing or CRA compliance within the lending area, a member of senior

management, or a member of the Board of Directors shall receive the training referenced in Paragraph 17, a copy of this Agreed Order, and be provided an opportunity to have any questions answered. The Bank will either secure signed acknowledgements in the form of Appendices A and B no later than 30 business days after the individual becomes an employee within the lending area, a member of senior management, or a member of the Board of Directors or maintain records of electronically generated reports validating that the fair lending training and Agreed Order were delivered within 30 days of the hiring date.

### C. Community Credit Needs Assessment

21.    Within 60 days of the Effective Date of this Agreed Order, the Bank shall engage an independent third party to conduct a community credit needs assessment that provides the following information about majority-Black census tracts within Indianapolis-Marion County: (1) residential mortgage credit needs of residents; (2) recent demographic information; (3) potential strategies to provide residential mortgage lending services to those residents; and (4) an overview of federal, state, and local programs that are available to residents in seeking and obtaining residential mortgage loans.

22.    Within 30 days of the assessment's completion, the Bank shall provide a copy of the community credit needs assessment to the United States. The United States shall have 30 days to review and issue a non-objection to the Bank.

23.    Within 30 days of receiving the United States' non-objection, the Bank shall present the assessment to all Bank committees responsible for overseeing fair lending compliance.

### D. Director of Community Lending and Development

24.    First Merchants Bank shall designate a full-time Director of Community Lending and Development for the duration of this Agreed Order. The primary responsibilities of the

Director of Community Lending and Development shall include overseeing the continued development of the Bank's lending in majority-Black census tracts. The Director of Community Lending and Development will be an officer level position that reports directly to the President/Chief Executive Officer and the Director of Mortgage Lending. The Director of Community Lending and Development shall provide reports on at least a quarterly basis to the Board of Directors regarding the following responsibilities: (1) monitoring the activities of loan officers regarding the solicitation and origination of loans in majority-Black census tracts, including the special loan subsidy fund described in Section III-I; (2) coordinating the Bank's involvement in community lending initiatives and outreach programs; (3) serving as a resource to lending staff to encourage and develop more lending within majority-Black census tracts; (4) promoting financial education; (5) providing financial counseling; and (6) building relationships with community groups.

### E.    Community Reinvestment Act Assessment Area

25.    In 2016, First Merchants Bank modified its assessment area under the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901-2908, to include Indianapolis-Marion County. In accordance with Paragraph 12, the Bank shall serve a lending area that includes all counties that comprise its current CRA assessment area recognized by the FDIC that includes all of Indianapolis-Marion County.

26.    During the term of this Agreed Order, the Bank will provide written notice to the United States of any changes it proposes to its CRA assessment area. The United States will raise any concerns with the Bank's proposed changes to its assessment area with the Bank and its regulators within 30 days of receiving notice. Nothing in the Order precludes the Bank from

expanding its CRA assessment area in the future in a manner consistent with the provisions of the CRA and its implementing regulations.

27.     The Bank will ensure that all of its policies, publications, and marketing materials that refer to the geographic area in which the Bank focuses its lending efforts describe an area no smaller than the lending area it is required to serve under Paragraphs 12 and 25.

**F.     Physical Expansion to Serve Majority-Black Census Tracts**

28.     Subject to appropriate regulatory approval, First Merchants Bank will open one new full-service branch located in a majority-Black census tract in Indianapolis-Marion County. This branch shall be in a visible location that is accessible to concentrations of owner-occupied residential properties in majority-Black census tracts in Indianapolis-Marion County.  The branch shall provide the complete range of services offered at the Bank's full-service branches and will accept first-lien mortgage loan applications.

29.     Subject to appropriate regulatory approval, First Merchants Bank will open one loan production office in Indianapolis-Marion County that is centrally located to multiple majority-Black census tracts and accessible to residents of those tracts through public transportation.  The Bank will advertise this location in a manner similar to which it advertises its other branches and will provide signage visible to the public indicating the location of this loan production office.  The loan production office will have a full-service automated teller machine.  First Merchants Bank will also maintain regular business hours during which members of the public can access loan services at this loan production office.

30.     First Merchants Bank will make reasonable efforts to open the branch and loan production office as discussed in Paragraphs 28 and 29 within 12 months of the Effective Date.  If either the branch or the loan production office has not been opened or acquired, or the Bank

otherwise fails to meet the requirements of Paragraphs 28 and 29, the Bank will provide a written plan, subject to the United States' non-objection, setting forth in detail the steps to be taken to comply with Paragraphs 28 and 29.

31.    Nothing in this Agreed Order precludes the Bank from opening or acquiring additional branch offices or loan production offices.  The Bank will evaluate future opportunities for expansion within the lending area, whether by acquisition or opening new branches, and consider the goals of this Agreed Order in making such an evaluation.  The Bank must notify the United States of any plans to open or acquire any new branches or other offices within the lending area at the same time that it notifies its regulators so the United States may raise any concerns with the Bank and its regulators before regulatory approval is granted.

32.    Within 180 days of the Effective Date, the Bank will ensure that not less than two mortgage loan officers total, are assigned to solicit applications from majority-Black census tracts within its lending area.  The Bank shall assign each loan officer so as to cover all majority-Black census tracts within its lending area.  The Bank will ensure these loan officers have the opportunity to earn similar compensation to other loan officers.

### G.    Advertising, Community Outreach, Consumer Financial Education, and Credit Repair Initiatives

33.    The Bank shall spend a minimum of $125,000 per year on advertising, outreach, consumer financial education, and credit repair counseling described in Section III-G for a total expenditure of $500,000 over the term of this Agreed Order.

34**.**    Within 90 days of the Effective Date, the Bank will submit a written plan to the United States for how it will implement the requirements of Paragraph 33.  The written plan shall include an explanation of why the Bank selected certain tactics and community partnerships.  The written plan should also describe, to the extent possible, how the Bank plans to implement the

tactics and community partnerships.  The United States shall have 30 days to issue a non-objection to the written plan.

35.    The Bank will evaluate the tactics and community partnerships outlined in its written plan annually in order to identify any required changes to better assist residents of majority-Black census tracts in Indianapolis-Marion County in obtaining credit.  The Bank will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 48.  Any proposed changes will be subject to non-objection to the United States.

### H.    Advertising and Other Outreach

36.    The Bank will advertise and conduct outreach within majority-Black census tracts. Under this Agreed Order, the Bank's advertising and outreach will endeavor to effectively advertise the loan subsidy fund, and will be targeted to generate applications for mortgage loans from qualified residents in majority-Black census tracts in Indianapolis-Marion County.  This advertising and outreach shall include, at a minimum, the following components:

(a)    <u>Print Media</u>.    During each year of the Agreed Order, in addition to any other advertising, the Bank shall advertise, or continue to advertise, in at least one print medium specifically directed to African-American readers in Indianapolis-Marion County.  These advertisements shall include similar information to that contained in other print media by the Bank and also shall include the addresses and phone numbers of branches closest to majority-Black census tracts in the lending area.  The Bank retains the discretion to determine the size, content, and frequency of such advertising subject to the standards set forth above.

(b)    <u>Radio</u>. During the term of the Agreed Order, in the event that the Bank uses radio advertising for any purpose, the Bank shall place radio advertisements on at least one

African-American-oriented radio station serving Indianapolis-Marion County. The radio advertising shall contain information contained in other radio advertisements. The Bank retains the discretion to determine the content and frequency of such radio spots subject to the standards set forth above and to place such advertising on additional stations, as necessary.

      (c)   <u>Internet</u>.    During the term of the Agreed Order, in the event the Bank uses Internet or web-based targeted advertising, the Bank shall ensure that such advertisements reach majority-Black census tracts within Indianapolis-Marion County. The Internet or web-based advertising shall contain information similar to that in the Bank's other targeted Internet or web-based advertising. The Bank retains the discretion to determine the content and frequency of such advertisements subject to the standards set forth above.

      (d)   <u>Promotional Materials</u>.    The Bank shall create point-of-distribution materials, such as posters and brochures, targeted toward majority-Black census tracts to advertise products and services, including any special loan products or services, made available under this Agreed Order. The Bank shall place or display these promotional materials in its branch offices, loan production offices, and any other locations in majority-Black census tracts within Indianapolis-Marion County.

      (e)   <u>Direct Mailings</u>.    The Bank also may utilize direct mailing targeted to residents in majority-Black census tracts.

      (f)   <u>Equal Opportunity</u>.    All of the Bank's print advertising and promotional materials referencing residential mortgage loans shall contain an equal housing opportunity logo, slogan, or statement. All radio or television advertisements shall include an audible statement that the Bank is an "Equal Opportunity Lender" or "Equal Housing Lender."

37.     The Bank shall also provide for two outreach programs per year during the term of this Agreed Order for real estate brokers and agents, developers, and public or private entities engaged in residential real estate-related business in majority-Black census tracts to inform them of the products and services offered, including those detailed in this Agreed Order, and to otherwise develop business relationships with them.  These programs shall be offered at a location reasonably convenient to the business operations of the attendees.

38.     The Bank shall develop a consumer education program that is designed to provide information, training, or counseling services to individuals in Indianapolis-Marion County on consumer finance and/or credit repair.  The consumer education program shall be designed to educate and assist loan applicants from majority-Black census tracts in Indianapolis-Marion County.

39.     The Bank shall also provide for a minimum of four outreach seminars per year during the term of this Agreed Order targeted toward residents in majority-Black census tracts in Indianapolis-Marion County and held at a location convenient to those residents.  These seminars shall cover credit counseling, financial literacy, and other related educational programs, to help identify and develop qualified loan applicants from those areas.

40.     The Bank may underwrite or sponsor non-profit events in support of the majority-Black census tracts in Indianapolis-Marion County that are related to building relationships within those areas and designed to generate applications for home mortgages.

**I.     Loan Subsidy Fund**

41.     The Bank will invest a minimum of $1.12 million in a special loan subsidy fund to be used during the term of this Agreed Order to increase the amount of credit that the Bank extends to residents in majority-Black census tracts in Indianapolis-Marion County for home mortgage

loans, home improvement loans, and home refinances. No more than twenty-five percent of the special loan subsidy fund can be used for home refinances. The loan subsidy fund may be used for down payment assistance, closing cost assistance, mortgage insurance premiums, and any other appropriate assistance measures approved by the United States in writing.

42.    Under the special loan subsidy fund, the Bank will subsidize loans made to "qualified applicants." A "qualified applicant" for a residential loan is any applicant who: (1) qualifies for a residential mortgage loan or refinance under the Bank's underwriting standards; and (2) applies for a mortgage loan or refinance for a residential property located in a majority-Black census tract that will serve as the borrower's primary residence.

43.    No qualified applicant may receive a total subsidy greater than $7,500 per loan.

44.    The loan subsidy program will be marketed in a manner that does not exclude any of the majority-Black census tracts so that all eligible residents in Indianapolis-Marion County have an opportunity to participate.

45.    No provision of this Agreed Order, including any loan subsidy or equivalent program, requires the Bank to make any unsafe or unsound loan or to make a loan to a person who is not qualified for the loan based upon lawful, non-discriminatory terms; however, the Bank may choose to apply more flexible underwriting standards in connection with the programs under this Agreed Order, so long as those standards comport with safe and sound lending practices. In addition, the Bank's underwriting standards applied to residents of majority-Black census tracts must be no less favorable than the standards that are applied in majority-White census tracts. At the same time, no provision of this Agreed Order imposes an obligation on the Bank to apply underwriting standards to applicants that qualify for the loan subsidy program that are more favorable than the standards otherwise applied by the Bank.

## IV.    Evaluating and Monitoring Compliance

46.    For the term of this Agreed Order, the Bank shall retain its records relating to its obligations hereunder, including lending activities, as well as advertising, outreach, branching, special programs, and other compliance activities as set forth herein.  The United States shall have the right to review and copy such records upon request.

47.    The Bank shall provide to the United States the data it submits to the Federal Financial Institutions Examination Council ("FFIEC") in accordance with the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801-2811.  The data will be provided in the same format in which it is presented to the FFIEC within 30 days of its submission to the FFIEC each year for the term of the Agreed Order, including the record layout.  The United States will utilize the data to monitor compliance with this Agreed Order.

48.    In addition to the submission of any other plans or reports specified in this Agreed Order, the Bank shall make an annual report to the United States on its progress in fulfilling the goals set forth above.  Each report shall provide a complete account of the Bank's actions to comply with each requirement of this Agreed Order during the previous year, the Bank's objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting the goal for that year, and any recommendations for additional actions to achieve the goals set forth above, including modifications to the Bank's community partnerships and community outreach activities.  The Bank's Board of Directors shall review and approve of the report, and the Bank shall submit its report within 60 days of the end of each year for the term of this Agreed Order.  In addition, the Bank shall attach to its annual reports representative copies of training material and advertising and marketing materials distributed under this Agreed Order.  The United States will review each report submitted and will have 30

16

days to raise any objections to it.  If the United States raises any objections, then the parties shall have 14 days to confer and resolve their differences.  The parties may mutually agree for additional time to confer, if necessary. In the event the parties are unable to resolve their differences, then either party may bring the dispute to the Court for resolution.

49.    All material required by this Agreed Order shall be sent to the United States by email to the Department of Justice attorney assigned to this matter, and by commercial overnight delivery service and addressed as follows:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division, U.S. Department of Justice
> 1800 G Street, NW, Suite 7002
> Washington, D.C. 20006
> Attn: DJ# 188-26S-14

50.    After July 12, 2019, all material required by this Agreed Order shall be sent to the United States by email to the Department of Justice attorney assigned to this matter, and by commercial overnight delivery service and addressed as follows:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division, U.S. Department of Justice
> 150 M Street, NE, 8th Floor
> Washington, D.C. 20002
> Attn: DJ# 188-26S-14

## V.    Administration

51.    The requirements of this Agreed Order shall remain in effect for four years, except that if substantial progress is shown by the Bank in increasing its lending in majority-Black census tracts in Indianapolis-Marion County, the parties may seek Court approval to terminate this Agreed Order after three years.

52.     If, within four years of the Effective Date, the Bank has not invested all money in the loan subsidy fund, then the Agreed Order shall terminate three months after the submission of the Bank's final report to the United States that demonstrates the fulfillment of its obligations.

53.     Any time limits for performance fixed by this Agreed Order may be extended by mutual written agreement of the parties.  The parties may also modify the requirements related to the loan subsidy fund described in Paragraphs 41-45 by mutual written agreement and without further Court approval.  Any other modifications to the Order may be made only upon approval of the Court, by motion by either party.  The parties recognize that there may be changes in the relevant and material factual circumstances during the term of the Agreed Order that may impact the accomplishment of its goals.  The parties agree to work cooperatively to discuss and attempt to agree upon any proposed modifications to the Agreed Order resulting from such changes.

54.     In the event that any disputes arise about the interpretation of, or compliance with, the terms of this Agreed Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to the Court for resolution.  The United States agrees that if it reasonably believes that the Bank has violated any provision of this Agreed Order, it will provide the Bank written notice thereof and give it 30 days to resolve the alleged violation before presenting the matter to the Court. In the event of a failure by the Bank to perform in a timely manner any act required by the Agreed Order or an act by the Bank in violation of any provision hereof, the United States may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

55.     Nothing in the Order shall excuse a Bank's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over the Bank that imposes additional obligations upon it.

56.     The Agreed Order shall be binding on the Bank, including all of its officers, employees, agents acting on behalf of the Bank, assignees, and successors in interest in the solicitation and origination of loans.  In the event the Bank seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar business, as a condition of sale, the Bank shall obtain the written accession of the successor or assign to any obligations under the Agreed Order for the remaining term.

57.     The parties agree that, as of the Effective Date, litigation is not reasonably foreseeable concerning the matters described above.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described above, the party is no longer required to maintain such litigation hold.  Nothing in this Paragraph relieves the parties of any other obligations imposed by this Agreed Order.

58.     The Bank's compliance with the terms of the Agreed Order shall fully and finally resolve all claims of the United States alleging that the Bank violated the FHA and ECOA, including claims for injunctive and equitable relief, monetary damages, and civil penalties.  The Agreed Order does not release claims for practices not addressed in the Complaint, including claims that may be held or are currently under investigation by any federal agency, or any claims that may be pursued or actions that may be taken by any executive agency established by 12 U.S.C. § 5491, or the appropriate Federal Banking Agency, as defined in 12 U.S.C. § 1813(q), against the Bank, any of its affiliated entities, or any institution-affiliated party of it, as defined in 12 U.S.C. § 1813(u), in accordance with 12 U.S.C. § 1818 or any other statute or regulation.  The Agreed Order does not resolve or release any claims other than claims for discrimination.

59.     The parties to this Agreed Order shall bear their own costs and attorneys' fees.

60.    The Court shall retain jurisdiction over this civil action to enforce the terms of this Agreed Order.  The civil action is accordingly dismissed without prejudice.

SO ORDERED, this ____ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby apply for and consent to the entry of this Agreed Order:

**For the United States of America:**

|  |  |
|---|---|
| | ERIC S. DREIBAND |
| | Assistant Attorney General |
| | Civil Rights Division |
| JOSHUA MINKLER | SAMEENA SHINA MAJEED |
| United States Attorney | Chief |
| Southern District of Indiana | |
| /s/ Kelly Rota | /s/ Junis L. Baldon |
| KELLY ROTA | JON M. SEWARD |
| Assistant United States Attorney | Principal Deputy Chief |
| United States Attorney's Office | JUNIS L. BALDON |
| Southern District of Indiana | MARTA CAMPOS |
| 10 West Market Street, Suite 2100 | Trial Attorneys |
| Indianapolis, IN 46204-3048 | Housing and Civil Enforcement Section |
| Phone:  (317) 226-6333 | 950 Pennsylvania Avenue NW - NWB |
| Fax:      (317) 226-6125 | Washington, D.C. 20530 |
| Kelly.Rota@usdoj.gov | Phone:  (202) 514-4713 |
| | Fax:      (202) 514-1116 |
| | Junis.Baldon@usdoj.gov |

**For First Merchants Bank:**

|  |  |
|---|---|
| /s/ Andrea K.  Mitchell | /s/ Richard J. Hall |
| ANDREA K. MITCHELL | RICHARD J. HALL |
| CHRISTOPHER T. NAPIER | Barnes & Thornburg LLP |
| Mitchell Sandler LLC | 11 South Meridian Street |
| 1120 20th Street, NW, Suite 725 | Indianapolis, IN 46204-3535 |
| Washington, D.C. 20036 | Phone:  (317) 231-7516 |
| Phone:  (202) 886-5260 | Fax:  (317) 231-7433 |
| amitchell@mitchellsandler.com | richard.hall@btlaw.com |
| ***Signed with Permission*** | ***Signed with Permission*** |

**APPENDIX A**

I hereby acknowledge that on _____, I attended the fair lending training program provided to First Merchants Bank employees by _____. During the training, I received information about my fair lending obligations under the terms of the Agreed Order entered by the federal district court in *United States v. First Merchants Bank,* First Merchants Bank's current policies, and relevant federal, state, and local laws. I had the opportunity to ask questions and to receive answers to them. I understand my fair lending obligation under the Agreed Order, First Merchants Bank's policies, and those laws.

_____
[Signature]

_____
[Print Name]

_____
[Job Title]

_____
[Date]

**APPENDIX B**

I hereby acknowledge that I have received and read a copy of the Agreed Order entered in

*United States v. First Merchants Bank*. I have had the opportunity to ask questions and obtain

answers to them and I understand my fair lending obligations under the Agreed Order.

 

_____
[Signature]

_____
[Print Name]

_____
[Job Title]

_____
[Date]