UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:19-cv-02365-JPH-MPB |
| FIRST MERCHANTS BANK, | ) |
| Defendant. | ) |

**ORDER**

The United States of America and First Merchants Bank filed a Joint Motion for Entry of Settlement and Agreed Order (the "Settlement Agreement") for approval and entry by the Court. Finding that the Court has authority to enter the Settlement Agreement and that the Settlement Agreement is lawful, fair, reasonable, and adequate, the motion is **GRANTED**. Dkt. [2].

**I.
Background**

On June 13, 2019, the United States filed a civil complaint alleging that First Merchants Bank violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f as follows: engaged in unlawful redlining by avoiding providing mortgage credit services to majority-Black areas in Marion County, Indiana between 2011 and 2017; excluded Indianapolis-Marion County and its 50 majority-Black census tracts from the Bank's Community Reinvestment Act assessment area, while including overwhelmingly white counties; failed to have any branch locations in majority-Black areas of Indianapolis-Marion County, refused to market in

1

majority-Black counties, and had a disproportionately low number of loan applications and loan originations from majority-Black neighborhoods compared to its peer institutions. Dkt. 1. First Merchants Bank also had a residential mortgage lending policy that provides a lending preference based on the location of borrowers, not their creditworthiness. *Id.*

On the same day the complaint was filed, the parties filed with the Court the Settlement Agreement. Dkt. 2. In the Settlement Agreement, First Merchants Bank does not admit to any of the allegations in the complaint but agrees to:

- take all actions necessary to ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit (¶ 9)
- retain an independent third-party consultant to assess its fair lending risk management program (¶ 14)
- maintain a fair lending monitoring program (¶ 16)
- provide various training to all employees (¶ 17)
- conduct a community credit needs assessment (¶ 21)
- designate a full-time Director of Community Lending and Development (¶ 24)
- serve a lending area that includes all counties that comprise its current Community Reinvestment Act assessment area that includes all of Indianapolis-Marion County (¶ 25)
- open one new full-service branch located in a majority-Black census tract in Indianapolis-Marion County (¶ 28)

- open one loan production office in Indianapolis-Marion County that is centrally located to multiple majority Black census tracts and accessible to residents of those tracts through public transportation (¶ 29)
- spend a total of $500,000 on advertising, outreach, consumer financial education, and credit repair (¶ 33)
- advertise and conduct outreach within majority-Black consensus tracts (¶ 36) and
- create a loan subsidy fund of $1.12 million aimed at majority-Black census tracts in Indianapolis-Marion County (¶ 41).

The Settlement Agreement also has various provisions to assure compliance, including regular reporting requirements (¶¶ 46–50).

## II.
## Analysis

As noted in docket 9, the Settlement Agreement is effectively a consent decree because it requires judicial approval and would be subject to the Court's continuing jurisdiction. *See United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002); *Kasper v. Bd. of Election Comm'rs*, 814 F.2d 332, 338 (7th Cir. 1987). "A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). Since a consent decree is the exercise of federal power—enforceable by contempt—a consent decree must (1) spring from and serve to resolve a dispute within the court's subject matter

3

jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based. *Local No. 93, Int'l Ass'n of Firefighters, etc. v. Cleveland*, 478 U.S. 501, 525 (1986).

The Settlement Agreement satisfies each of the three *Local No. 93* factors. First, the United States' complaint under the FHA and the ECOA falls within the Court's subject-matter jurisdiction. 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1345 (the United States as a plaintiff). The Settlement Agreement will thus resolve the dispute that is within the Court's jurisdiction. Second, the complaint alleges that First Merchants Bank engaged in a pattern or practice of mortgage credit discrimination based on race in providing residential real estate-related credit. A remedy restricting or prohibiting First Merchants Bank from engaging in any act or practice of racial discrimination in any aspect of a residential real estate-related transaction thus comes within the general scope of the case. Dkt. 10. Third, the Settlement Agreement will further the goals of the FHA and ECOA by facilitating First Merchants Bank's compliance with them.

Even when a court has the predicate authority to enter a consent decree, however, it should only do so if the "proposed decree is lawful, fair, reasonable, and adequate." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). In making this determination, the Court begins from "the federal policy encouraging settlement." *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011). "The district court may not deny approval

4

of a consent decree unless it is unfair, unreasonable, or inadequate" and should be "chary" of so finding. *Hiram Walker & Sons, Inc.*, 768 F.2d at 889–90.

The Settlement Agreement is lawful, fair, reasonable, and adequate. The FHA and the ECOA are remedial statutes that promote fair housing and equal credit opportunity by eliminating discrimination. *See* 42 U.S.C. § 3601; 15 U.S.C. § 1691(a)(1). The Settlement Agreement calls for First Merchants Bank to take certain actions that are designed to facilitate the Bank's compliance with the FHA and the ECOA. Therefore, the Settlement Agreement is consistent with the applicable statutes.

The Settlement Agreement is also fair. Both parties represent that the settlement "is the product of a reasonable compromise between the parties" and that the negotiations process was "open and at an arm's length." Dkt. 10 at 6. The content of the Settlement Agreement supports this representation, for it provides benefits to both sides and carefully limits the agreement's requirements, suggesting extensive negotiation. Furthermore, the parties concede that "there was no guarantee of success for either side." *Id.* at 6. The parties submit that "litigation would only delay, and potentially deny, those affected communities immediate access to credit and equal housing opportunity." *Id.* at 8. Finally, both parties were represented by counsel with experience in fair lending lawsuits and investigations. *Id.* at 6.

In addition, the Settlement Agreement is reasonable because it is tailored to ending the policies and practices that allegedly led to discrimination, and to

assuring that no discrimination occurs in the future. It details specific policies that address the allegations contained in the complaint and provides for extensive review and reporting to assure any future problems are promptly discovered and remedied.

The Settlement Agreement also has a significant compensatory component, with First Merchants Bank agreeing to invest a minimum of $1.12 million in a special subsidy loan fund to increase the amount of credit that it extends to residents in majority-Black census tracts in Indianapolis-Marion County. By the United States' calculation, this loan subsidy fund will increase First Merchants Bank's lending volume in majority-Black areas in Indianapolis-Marion County, which could lead to approximately $22 million in new home sales. Dkt. 10 at 7–8. First Merchants Bank will also expend a total of $500,000 on advertising, outreach, consumer financial education, and credit repair counseling. *Id.* at 7. The Settlement Agreement thus offers a significant benefit to the United States.

At the same time, it is fair to First Merchants Bank because it "ends a two-year investigation into the Bank's lending processes consistent with the Bank's legitimate interests," and "permits the Bank to increase its presence in majority-Black areas in Indianapolis-Marion County." *Id.* Additionally, with no factual finding or adjudication, the Bank "avoids the likelihood of another enforcement action by the United States or other financial regulator for the foreseeable future." *Id.*

6

# IV.
# Conclusion

The Settlement Agreement is lawful, fair, reasonable, and adequate. The Joint Motion for Entry of the Settlement Agreement and Agreed Order is **GRANTED**. Dkt. [2]. The Settlement Agreement is **ENTERED**.

Pursuant to the Settlement Agreement, the Court retains jurisdiction over this civil action to enforce the terms of this Settlement Agreement. Dkt. 2-1 at 20 (¶ 60). Judgment consistent with this ruling shall now issue.

**SO ORDERED.**

Date: 8/9/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Junis L. Baldon
U.S. DEPARTMENT OF JUSTICE
junis.baldon@usdoj.gov

Marta Campos
U.S. DEPARTMENT OF JUSTICE (Washington DC)
marta.campos@usdoj.gov

Brian T. Hunt
FIRST MERCHANTS BANK
bhunt@firstmerchants.com

Kelly Rota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelly.rota@usdoj.gov